# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KEVIN LOUVIERE, TERRY MATTHEW HALL, JR., and FLOYD WILLIAMS | § § § | CIVIL ACTION NO.  20-1840 |
| **Plaintiffs** | § | |
| | § | |
| versus | § | |
| | § | **JUDGE WENDY B. VITTER** |
| ST. TAMMANY PARISH GOVERNMENT, a/k/a ST. TAMMANY PARISH COUNCIL; RANDY SMITH, in his official and individual capacity; RODNEY J. STRAIN, in his official and individual capacity; GREG LONGINO, in his official and individual capacity; and LACEY KELLY, in her official and individual capacity | § § § § § § § § § § | **MAGISTRATE** **DONNA PHILLIPS CURRAULT** |
| **Defendants** | § | **JURY DEMAND** |
| | § | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**NOW INTO COURT**, through undersigned counsel, come Defendants, Sheriff Randy Smith, Lacey Kelly, Rodney J. Strain, and Greg Longino, each in their official and individual capacities, and herewith provide the following opposition to the Plaintiffs' Motion for Class Certification (R. Doc. 37):

## BACKGROUND

Plaintiffs filed the instant action on June 29, 2020 in which Plaintiffs allege violations of their civil rights pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and the laws of the State of Louisiana. Plaintiffs' complaint challenges the conditions of their pre-trial detainment at the St. Tammany Parish Jail, and in particular, Plaintiffs have alleged that there is an established policy or practice at the St. Tammany Jail to keep pre-trial detainees in holding longer than 48 hours, and that this policy or practice has

91093

resulted in overcrowded and unsanitary conditions within the holding cells. Plaintiffs have named as defendants not only the current Sheriff of St. Tammany, Sheriff Randy Smith, and the warden of the St. Tammany Parish Jail at all times material hereto, Lacey Kelly, both of whom were in office at all times relevant to their detentions, but also Sheriff Smith's predecessor-in-office, Rodney Strain, as well as Major Kelly's predecessor, Mr. Greg Longino. Plaintiffs now seek to certify a class in this matter, which Defendants oppose.

## LAW AND ARGUMENT

### I.   Legal Standard

The Court must conduct a "rigorous analysis" of the prerequisites laid out in Rule 23[1] before certifying a class, and the decision to certify a class is within the "broad discretion of the Court," provided the Court follows the requirements set out in Rule 23.[2] The party seeking certification bears the burden of proof for certification of a class and must provide more than assurances to carry that burden.[3] A court's certification order "often bestows upon plaintiffs extraordinary leverage, and its bite should dictate the process that precedes it," therefore, because of the important due process concerns inherent in class certification, the court must "'find,' not merely assume the facts favoring class certification."[4] In fact, these due process considerations are so strong that a court must "give full and independent weight to each Rule 23 requirement, regardless of whether that requirement overlaps with the merits."[5] This means when a court certifies a class, it must "detail with sufficient specificity how the plaintiff has met the

---

[1] Fed. R. Civ. P. 23.
[2] *Castano v. American Tobacco Co.,* 84 F. 3d 734, 740-742 (5th Cir. 1996).
[3] *Id.*
[4] *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 267 (5th Cir. 2007).
[5] *Id.* at 268.

requirements."[6] This analysis is necessary to protect "any unknown or unnamed potential class members [who],… by definition… do not and cannot participate …"[7]

## II.  Plaintiffs' do not satisfy any of the Rule 23(a) requirements

In order to certify a class, Federal Rule of Civil Procedure 23 requires that every one of the requirements listed in 23(a) be met before certification can be granted. Rule 23 states that

> One or members of a class may sue or be sued as representative parties on behalf of all members **only** if:
>
> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; **and** (4) the representative parties will fairly and adequately protect the interest of the class. (Emphasis added).

### A.  Plaintiffs fail to support a claim of numerosity

To demonstrate numerosity, plaintiffs must "demonstrate some evidence or reasonable estimate of the number of purported class members."[8] The number of members in a class is not by itself determinative of whether joinder is impracticable, and the Court may look to other factors as well such as the nature of the action, the ease with which class members may be identified and the geographical dispersion of the purported class.[9]

As stated above, the burden of proof for class certification rests on Plaintiffs, and Plaintiffs have failed to carry their burden regarding numerosity. Plaintiffs claim a potential class of over 5,000 men, however the only proof for this assertion that they bring is one paragraph that references a 735-page Movement Report. (R. Doc. 37-1, p. 9). There is no explanation or analysis of this document, nor are there references to any pages in it. The document itself does not contain a line count or even its own analysis, so it would be necessary for undersigned

---

[6] *Vizena v. Union Pac. R.R. Co.,* 360 F.3d 496, 503 (5th Cir. 2004).
[7] *Stirman v. Exxon Corp.,* 280 F.3d 554, 563 (5th Cir. 2002).
[8] *Ibe v. Jones,* 836 F.3d 516, 528 (5th Cir. 2016).
[9] *Id.*

91093

counsel and the Court to conduct their own counts to determine how many individual names are on the list before even trying to decide how many of those people would qualify for the purported class. The Movement Report is simply raw data compiled by the St. Tammany Parish Sheriff's Office, and it is incumbent upon Plaintiffs to offer analysis and present an argument connecting the raw data to the requirement of Rule 23(a)(1). Plaintiffs fail to do this and therefore do not show numerosity.

### B.  Plaintiffs' claims do not contain common questions of law or fact

In order to certify a class, Plaintiffs must show that there is a common question of law and fact to the class. Plaintiffs cite older cases that state that the commonality "threshold [was] not high"[10] or that the commonality requirement "is easily met."[11] (R. Doc. 37-1, p. 10). However, the Supreme Court's 2011 "*Wal-Mart* decision has heightened the standards for establishing commonality under Rule 23(a)(2)," rendering older analysis "insufficient."[12] The Supreme Court in the *Wal-Mart* ruling "expounded on the meaning of its precedent providing that '[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury.'"[13]

"'Rule 23 does not set forth a mere pleading standard.' Instead, a plaintiff 'must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* … common questions of law or fact[.]'"[14] This requirement states that the "putative class members' claims 'must depend upon a common contention' that 'must be of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

---

[10] *Jenkins v. Raymark*, 782 F.2d 468, 472 (5th Cir. 1986).
[11] *EEOC v. Detroit Edison Co.*, 515 F.2d 301, 311 (6th Cir. 1975).
[12] *M.D. v. Perry*, 675 F.3d 832, 839 (5th Cir. 2012).
[13] *Id.* at 840 *citing Wal-Mart*, 131 S. Ct. at 2551 (citation omitted).
[14] *Yates v. Collier*, 868 F.3d 354, 362 (5th Cir. 2017) *citing Wal-Mart,* 564 U.S. 338, 350 (2011).

stroke.'"[15] The crux of this requirement is therefore "'not the raising of common questions – even in droves – but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.'"[16] Furthermore, a plaintiff must do more than show that the members of the putative class have all "suffered a violation of the same provision of law" because it is possible to violate the same provision of law in different ways.[17] "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."[18]

In order to show a common question of law or fact, Plaintiffs allege that "they and the members of the putative class experienced common, unconstitutional punitive conditions while housed at the St. Tammany Jail men's holding cells[,]" and that the "'common questions' derived from Plaintiffs' claims, such that resolution of these questions would resolve the putative class' claims in 'one fell swoop,' are the conditions of the cells… and whether those conditions were unconstitutionally punitive…" (R. Doc. 37-1, p. 11). Plaintiffs then argue, however, that all members of the putative class were housed in the same holding cells at the St. Tammany Parish Jail, attended to by the same staff, and overseen by the same supervisory personnel. These facts are not common questions of any wrongdoing, merely basic observations of how the jail is run that do not prove Plaintiffs' assertions.

Plaintiffs then allege that they and the Plaintiffs in *Baqer v. St. Tammany Parish Government, et al.* No. 2020-CV-980 Section "D"(2) suffered from unclean conditions, cold temperatures and a lack of mattresses and sheets. (R. doc. 37-1, p. 11). Plaintiffs then further allege that they were subjected to overcrowded conditions, were refused medication, were

---

[15] *Id.*
[16] *Id.* at 361.
[17] *Id.*
[18] *Wal-Mart*, 131 S. Ct. at 2551 (citation omitted).

91093

deprived of recreational activity, had "sparing access to showers" and were "taunted" by jail staff (R. Doc. 37-1, pp. 12). If Plaintiffs were able to show that one or the few inmates who filed grievances were taunted by jail personnel, how would this resolve anything for the rest of the class? What central issue for the whole class would be resolved by this "stroke?" These allegations by Plaintiffs fail to rise to the level of a common question of law or fact for the class, and Plaintiffs therefore fail to meet their burden on this issue.

These allegations are not violations under federal law and therefore present no question of fact or law at all. Confinement in a holding cell for a period of fifteen days before being transferred into the general population is "brief" and "insufficient to rise to the level of a constitutional violation."[19] Furthermore, twelve days spent confined in "overcrowded, unpleasant, and unsanitary conditions was too brief a period to support a constitutional claim."[20]

Plaintiffs then further allege that the cell floor had "bodily fluids, including feces, urine, and vomit" on it (R. Doc. 37-1, p. 11). Plaintiffs make other allegations as well such as being issued musty blankets, but just these allegations present such a wide variety of facts that there could not possibly be a common question of law or fact. In fact, Plaintiffs only make accusations that they, and a handful of others have directly observed. Plaintiffs bring no evidence that these conditions affected anyone else beyond their own statements. Furthermore, unless every member of the putative class suffered from all of these alleged violations, the Court would have to conduct mini-trials to determine what violations a specific member of the putative class suffered from and to what degree. Accordingly, this dissimilarity of fact defeats any claims of commonality of law or fact and therefore, class certification.

---

[19] *Allen v. St. Tammany Parish,* 2018 U.S. Dist. LEXIS 12254 at *10 (E.D. La. 2018)
[20] *Id. citing Kelly v. Gusman,* 2007 U.S. Dist. LEXIS 99098 (E.D. La. 2007).

91093

**C. The claims and defenses of the representative parties are not typical of the claims and defenses of the class**

"The typicality inquiry rests 'less on the relative strengths of the named an unnamed plaintiffs' cases than on the similarity of legal and remedial theories behind their claims.'"[21] In fact, the "commonality and typicality requirements of rule 23(a) tend to merge" because if there is no "common issue uniting the putative class," a representative's claims or defenses cannot be typical of this class.[22] A plaintiff must "prove much more than the validity of his own claim" in order to meet the requirements of typicality.[23] "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class."[24] To show typicality, Plaintiffs must show that they, as proposed class representatives, are asserting claims that are "the common class claims."[25]

Plaintiffs argue based on *Bertulli* that "differences in the extent of injury between class representatives and unnamed class members does not defeat class certification in this case."[26] (R. Doc. 37-1, p. 14). However, in *Bertulli*, the issue was a change in the calculation of seniority rankings among airline pilots, which led to a loss of seniority for some pilots, affecting routes and pay. In that case, one change, how the seniority rankings were determined, lead to damages to an entire class, and the pilots in *Bertulli* all suffered the same injury, *i.e.* a loss of seniority. In that case, small differences in the exact pay, routes or other benefits lost by the pilots were not enough to defeat a class certification. The instant case is distinguishable from *Bertulli*, as Plaintiffs in this case claim a variety of injuries that did not affect every member of the putative class and not one particular act that caused injury. Plaintiffs claim no single injury or group of

---

[21] *Ibe,* 836 F.3d at 528-529 *citing Jenkins v. Compaq Comput. Corp.,* 782 F.3d 468, 472 (5th Cir. 1986),
[22] *Flecha v. Medicredit, Inc.,* 946 F.3d 762, 768 (5th Cir. 2020).
[23] *Gen. Tel. Co. of the Southwest v. Falcon,* 102 S. Ct. 2364, 2371 (1982).
[24] *Stirman,* 280 F.3d at 562. (citation omitted).
[25] *Dockery v. Fischer,* 253 F. Supp. 3d 832, 2015 U.S. Dist. LEXIS 135853.
[26] *Bertulli v. Indep. Ass'n of Cont'l Pilots,* 242 F.3d 290, 297 (5th Cir. 2001).

91093

injuries that every member of the putative class suffered. In fact, Plaintiffs' total argument on the facts of this case is one paragraph in length and merely assumes that since Plaintiffs allegedly were subjected to a series of abuses while inmates, that the rest of the putative class was subjected to the same alleged abuses as well. (R. Doc. 37-1, p. 14). Plaintiffs do not connect the violations that they allegedly suffered to violations against the rest of the putative class and therefore fail to show typicality.

### D. The representative parties will not fairly and adequately protect the interest of the class

Rule 23(a) requires that the representative parties fairly and adequately protect the interest of the class. The adequacy requirement looks to both the class representatives and their counsel.[27] "Because absent class members are conclusively bound by the judgment in any class action brought on their behalf, the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times."[28] Adequacy requires an inquiry into "the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of the absentees."[29] The class representatives must "possess a sufficient level of knowledge and understanding to be capable of controlling or prosecuting the litigation."[30] This requirement includes counsel as well, as "the court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members."[31] Additionally, the 23(a)(4) adequacy prong requires a court to uncover any conflicts of interest between named parties and the

---

[27] *Jenkins,* 782 F.2d at 472.
[28] *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 480 (5th Cir. 2001).
[29] *Id.* at 482 (quotation omitted).
[30] *Id.* at 482-483 (quotation omitted).
[31] *Unger v. Amedisys Inc.,* 401 F.3d 316, 321 (5th Cir. 2005).

91093

putative class, which means that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members."[32]

Here, the class representatives do not adequately represent the putative class's interests. Plaintiffs' counsel had previously filed another action in this Court, *Ahmed Baqer, et al. v. St. Tammany Parish Government, et al.,* No. 20-980, Section (D)(2), which presents significant overlaps of law and fact with the instant case. In both *Baqer* and in the instant matter, the named defendants are identical as well as Plaintiffs' counsel. Furthermore, Plaintiffs in *Baqer* have filed to consolidate that matter with the instant matter, to which Defendants have not objected (*Baqer* R. Doc. 94). In *Baqer*, Plaintiff Klabert Joseph Guillot, Jr. failed to adequately prosecute his case by neglecting to go through the proper administrative procedure prior to filing suit (*Baqer* R. Doc. 37-1, p. 4; *Baqer* R. Doc. 40, p. 25; *Baqer* R. Doc. 44, pp. 83-84). A prisoner must exhaust all administrative remedies prior to suit,[33] and this Court has already found that Guillot, Jr. lacked standing at a prior stage in this suit based on that failure to exhaust (*Baqer* R. Doc. 40, p. 25). Guillot, Jr.'s failure to properly exhaust the necessary administrative remedies prior to filing shows a lack of sufficient knowledge and willingness to control and prosecute the litigation both on his part and on the part of counsel. It shows a disconnect between Guillot, Jr. and counsel regarding basic, gateway facts to this litigation, and the ability of the class representatives and counsel to adequately manage this case on behalf of the absentees.

Plaintiffs Kevin Louviere, Terry Matthew Hall, Jr. and Floyd Williams fail to show that they would serve as adequate class representatives. As stated above, the burden of proof rests on Plaintiffs to show each element of Rule 23(a), and Plaintiffs fail to do this. Plaintiffs have not shown the necessary commonality of injury throughout the putative class to show that they have

---

[32] *Amchem Prods. V. Windsor,* 521 U.S. 591, 625-626 (1997). (quotation and citation omitted).
[33] 42 U.S.C.S. § 1997(e)(a) (LexisNexis 2020).

91093

suffered from the same injuries. Additionally, Plaintiffs argue that since they have shown a willingness to attend court on their Motion for Injunctive Relief and have no apparent conflicts of interest that they are therefore adequate class representatives. There is no evidence in the record that there was ever a motion filed for injunctive relief *in this matter*. There was a motion filed for injunctive relief in *Baqer*. Plaintiffs in this matter, however, did not attend Court on that day (*Baqer* R. Doc. 39). This standard sets a low bar, and this low bar coupled with the lack of any cohesive class shown by Plaintiffs and the poor coordination up to this point does not support a showing that Plaintiffs will fairly and adequately represent the class.

### III. Plaintiffs fail to meet the Rule 23(b)(3) requirement

Federal Rule of Civil Procedure 23 permits certification if, in addition to the Rule 23(a) requirements, at least one of the requirements in 23(b) is met. Plaintiffs in this matter allege that they meet Rule 23(b)(3), which states in pertinent part that the:

> questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of sperate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

"[T]he district court must "give careful scrutiny to the relationship between common and individual questions in a case."[34] The Court in *Mitchell* defined the difference between common

---

[34] *Mitchell v. State Farm Fire & Cas. Co.,* 954 F.3d 700, 710 (5th Cir. 2020) *citing Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1045 (2016).

and individual questions, stating "[a]n individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."[35] This requires the trial court to "weigh common issues against individual ones and determine which category is likely to be the focus of a trial."[36] While this test is similar to the requirement of common question or law found in Rule 23(a), this requirement is "far more demanding because it tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[37]

This requirement also extends to damages where the "key question is whether the calculation of damages for each class member is susceptible to a mathematical or formulaic calculation, or whether instead the formula by which the parties propose to calculate individual damages is clearly inadequate."[38] In fact, "where individual damages cannot be determined by reference to a mathematical formula or formulaic calculation, the damages issue may predominate over any common issues shared by the class."[39] In such cases where the facts of each individual's alleged damages become the focus rather than the class as a whole, class "certification is inappropriate."[40]

In order to show predominance, Plaintiffs cite to a district court case as authority that predominance can be decided on the question of liability. (R. Doc. 37-1, p. 22). This district court case, in turn cites to another district court case outside of this circuit[41] for this authority,

---

[35] *Id.* (quotation omitted).
[36] *Id. citing Crutchfield v. Sewerage & Water Bd. Of New Orleans,* 829 F. 3d 370, 376 (5th Cir. 2016).
[37] *Steering Comm. v. Exxon Mobil Corp.,* 461 F.3d 598, 601 (5th Cir. 2006).
[38] *Mitchell,* 954 F.3d. at 711.
[39] *Steering Comm.,* 461 F.3d at 602.
[40] *O'Sullivan v. Countrywide Home Loans, Inc.,* 319 F.3d 732, 744-745 (5th Cir. 2003).
[41] *Fry v. UAL Corp.,* 136 F.R.D. 626, 637 1991 U.S. Dis. LEXIS 5890 (N.D. Ill. 1991).

91093

which cites to another district court outside of this circuit.[42] Plaintiffs further cite to another district court case in order to show a constitutional standard of confinement. (R. Doc. 37-1, p. 23). Needless to say, this Court is not bound by these decisions.

In *Steering Comm.*, the court denied class certification because it found that there was no predominance of the common questions of the class members over the individual questions, and that the class action was not superior to the other available methods.[43] The damages in *Steering Comm.* resulted from a fire at a chemical plant that caused injuries to hundreds who filed suit alleging a wide variety of damages. The court noted that "each individual plaintiff suffered different alleged periods and magnitudes of exposure and suffered different alleged symptoms as a result... Moreover, many plaintiffs alleged as part of their claim for compensatory damages emotional and other intangible injuries."[44] The Court further noted that the "very nature of these damages, compensating plaintiffs for emotional and other intangible injuries, necessarily implicates subjective differences of each plaintiff's circumstances; they are an individual, not class-wide, remedy."[45]

Here, *Steering Comm.* is on point, as individual questions of damages predominate over any issues common to the class and do not lend themselves to a mathematical formulation. Plaintiffs allege claims as varied as overcrowding, irregular access to showers, the low temperature of the holding cells, foul odors, verbal abuse and failure to render aid among other allegations. (R. Doc. 37-1, p. 11-12). Some of these allegations are clearly minor and others less minor, and who was damaged and to what extent will necessarily affect the calculation of damages in a way not easily reduceable to a simple mathematical formula. Plaintiffs' allegations

---

[42] *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 1981 U.S. Dist. LEXIS 10389 (M.D. Fla. 1977).
[43] *Steering Comm.*, 461 F.3d
[44] *Id.* at 602.
[45] *Id.*

91093

in this case track with the facts in *Steering Comm.* in that one main cause, here the alleged condition of the jail, led to a wide variety of alleged damages for many people. In order to fully resolve this case, this Court would have the same problems as the court in *Steering Comm.* in that if this court certifies the class, it will have to sift through a multitude of highly differentiated cases with fact-specific damage determinations. These mini-trials on individual damages would predominate over any inquiry into whatever common questions exist, if any. Accordingly, questions of law or fact to the class members do not predominate over the questions affecting individual members.

In deciding to certify a class under Rule 23(b)(3), a court must also consider the "likely difficulties in managing a class action."[46] Bifurcation between liability and damages would not eliminate individualized determinations because of the lack of common questions of law or fact. A damages phase for any certified class based on these facts would turn on the facts of which violations that each member of the class suffered and to what degree. A second liability phase would be equally problematic. When the number of individual determinations is small, required by only a few members of the class, then bifurcation might be manageable, however in a case such the instant case in which Plaintiffs allege a class of thousands, bifurcation is not manageable.[47] The impossibility of managing such a class certification renders the class action inferior.

Plaintiffs further argue that there is only one other pending matter that concerns these claims, citing to the instant matter, and that Plaintiffs have already filed to consolidate both matters. (R. Doc. 37-1, p. 27). Defendants submit that Plaintiffs are actually referring to *Baqer*. Plaintiffs offer this as evidence that no class member interested in individually controlling his

---

[46] Fed. R. Civ. P. 23(b)(3)(D).
[47] *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.,* 100 Fed. Appx. 296, 301, 2004 U.S. App. LEXIS 11160 (5th Cir. 2004).

91093

own action would be harmed. However, this is just evidence that joinder of all the plaintiffs from both matters is practical and tends to argue that the number of people affected by Plaintiffs' alleged claims is small. Plaintiffs can point to no large and expanding body of cases presently litigating these issues that would require certification. Accordingly, the class action is not the superior method of adjudicating these claims.

### IV.   It is inappropriate to certify any particular issue under Rule 23(c)(4)

"When appropriate, an action may be brought or maintained as a class action with respect to particular issues."[48] "Rule (c)(4) is not a stand-alone clause. It does not permit plaintiffs to ignore the requirements of 23(a) or (b). Plaintiffs cannot sever issues in an attempt to circumvent Rule 23(b) requirements."[49] "A district court cannot manufacture predominance through the nimble use of subdivision (c)(4). The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, **as a whole**, must satisfy the predominance requirement of (b)(3)."[50]

A district court will not abuse its discretion if it declines to certify a class when plaintiffs seek to "excise from the class the very issue that defeats prominence under Rule 23(b)(3)."[51] In *Corley,* the district court declined to certify a class on liability alone because it found that the varied and individualized damages calculations caused the class as a whole to fail under Rule 23(b)(3). Accordingly, as Plaintiffs fail to support a finding of predominance under Rule 23(b)(3), certification under Rule 23(c)(4) would also be inappropriate.

---

[48] Fed. R. Civ. P. 23(c)(4).

[49] *Paternostro v. Choice Hotel Int'l Servs. Corp.,* 309 F.R.D. 397, 2015 U.S. Dist. At *27 (E.D. La. 2015).

[50] *Castano,* 84 F. 3d at 745 (emphasis added).

[51] *Corley v. Orangefield Indep. Sch. Dist.,* 152 Fed. Appx. 350 2005 U.S. App. LEXIS 22139 at *355 (5th Cir. 2005).

91093

## CONCLUSION

Plaintiffs have failed to show any of the requirements under Rule 23(a). Plaintiffs submit raw data without any analysis as proof of numerosity, they allege no common questions of law or fact, they fail to show that their claims are typical of the class, and they will not fairly and adequately protect the interests of the class. Furthermore, the individual questions of law or fact of the individual members of the putative class predominate over the common questions, rendering the class action inferior to other methods of adjudicating this matter. Accordingly, Defendants respectfully request that this Honorable Court deny Plaintiffs' motion in its entirety.

**Respectfully submitted,**

**MILLING BENSON WOODWARD L.L.P.**

*s/ Chadwick W. Collings*
_____
**CHADWICK W. COLLINGS, T.A.**　　**# 25373**
**LAUREN A. WILLIAMS**　　　　　**# 37917**
**68031 Capital Trace Row**
**Mandeville, Louisiana 70471**
**Telephone:　(985) 292-2000**
**Facsimile:　(985) 292-2001**
ccollings@millinglaw.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on December 17, 2020, by using the CM/ECF system, which system will send a notice of electronic filing to appearing parties in accordance with the procedures established.

*s/ Chadwick W. Collings*
_____
**Chadwick W. Collings**

91093