## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

KEVIN LOUVIERE, ET AL.                      CIVIL ACTION

VERSUS                                       NO. 20-1840-WBV-DPC

ST. TAMMANY PARISH GOVERNMENT, ET AL.        SECTION: D (2)

### ORDER AND REASONS

Before the Court is a Motion to Dismiss Pursuant to Rule 12(b)(6), filed by defendants, Rodney J. Strain and Greg Longino.[1]  Plaintiffs oppose the Motion.[2]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED**.

### I.       FACTUAL AND PROCEDURAL BACKGROUND

This is an action for declaratory, injunctive and compensatory relief regarding the conditions of pre-trial detention in the four holding cells at St. Tammany Parish Jail.  On June 29, 2020, Kevin Louviere, Terry Matthew Hall, Jr. and Floyd Williams (collectively, "Plaintiffs"), filed a Complaint seeking damages under 42 U.S.C. § 1983, asserting that they were forced to endure prolonged pre-trial detainment in dirty, cramped holding cells in St. Tammany Parish Jail (the "jail") in violation of their constitutional rights under the Fourteenth Amendment of the United States Constitution.[3]  Named as defendants in the Complaint are: (1) St. Tammany Parish Government a/k/a St. Tammany Parish Council; (2) Randy Smith, in his individual

---

[1] R. Doc. 25.
[2] R. Doc. 28.
[3] R. Doc. 1 at ¶¶ 1, 2, 154-165.

and official capacity as the Sheriff of St. Tammany Parish from July 1, 2016 to the present ("Sheriff Smith"); (3) Rodney J. Strain, in his individual and official capacity as Sheriff of St. Tammany Parish from 1996 until 2016 ("Strain"); (4) Greg Longino, in his individual and official capacity as Warden of the St. Tammany Parish Jail from "all relevant times and until October 11, 2019" ("Longino"); and (5) Lacey Kelly, in her individual and official capacity as Warden of the St. Tammany Parish Jail "[a]t all relevant times" ("Warden Kelly").[4]

Plaintiffs allege that the conditions of the holding cells presented a substantial risk of serious harm to pre-trial detainees, in violation of the Fourteenth Amendment to the United States Constitution and the Louisiana Constitution, and assert state law claims for negligence and *respondeat superior*.[5]  Specifically, Plaintiffs allege that pre-trial detainees were forced to endure detainment with as many as 24 detainees confined within a ten-foot by twenty-foot space for as long as 18 days.[6]  Plaintiffs assert that, as late as March 3, 2020, the number of detainees held in each holding cell ranged from 17 to 21.[7]  Plaintiffs further allege that pre-trial detainees were forced to sleep on the concrete floor, forced to urinate and defecate in front of each other in a toilet visible to all other detainees within the holding cell, deprived of hygienic products and denied access to showers for days at a time.[8]  Plaintiffs assert that the named defendants maintained a custom, practice, and *de facto* policy of

---

[4] *Id*. at ¶¶ 12-23.
[5] *Id*. at ¶¶ 154-187.
[6] *Id*. at ¶¶ 2, 68, 70.
[7] *Id*. at ¶ 74.
[8] *Id*. at ¶ 2.

housing new inmates in individual intake holding cells in excess of 48 hours without classifying and transferring new arrivals to the appropriate housing area.[9]  Plaintiffs allege that, upon information and belief, this custom, practice, and *de facto* policy was put in place as early as April 2011 when Strain was St. Tammany Parish Sheriff.[10] Plaintiffs further assert that the United States Department of Justice (the "DOJ"), conducted an investigation in 2012, which resulted in a report notifying defendants, St. Tammany Parish and former Sheriff Strain, that as many as 30 prisoners were held in holding cells designed to hold 20 prisoners, and that prisoners were sleeping on floors and benches in holding cells with little or no bedding.[11]  Plaintiffs assert that the DOJ also found that prisoners were required to remain in the holding cells for days, if not weeks, before they were assigned to housing units.[12]

With respect to the three named plaintiffs, Plaintiffs assert that Kevin Louviere was detained in a holding cell with 22 other pre-trial detainees at St. Tammany Parish Jail for 12 days in June 2019, before "Defendants finally moved Mr. Louviere out of the inadequate holding cell."[13]  Plaintiffs allege that during that time, Louviere was battered by violent inmates twice, resulting in bruises to his head and face.[14]  Plaintiffs assert that Terry Matthew Hall, Jr. was detained in a holding cell for 15 days between October 18, 2019 and November 1, 2019, along with 15 other pre-trial detainees, before "Defendants finally moved Mr. Hall out of the inadequate

---

[9] *Id.* at ¶ 59.
[10] *Id.* at ¶ 60.
[11] *Id.* at ¶¶ 61-63.
[12] *Id.* at ¶ 64.
[13] *Id.* at ¶¶ 96, 97, 99, 111.
[14] *Id.* at ¶ 106.

holding cell."[15]   Plaintiffs also assert that Floyd Williams was detained in a holding cell for 5 days between September 28, 2019 and October 3, 2019, along with 30 other pre-trial detainees, before "Defendants finally moved Mr. Floyd Williams out of the inadequate holding cell."[16]   Plaintiffs claim that prior to September 28, 2019, when Smith was a police chief, he told Williams in the context of an unrelated matter that he "did not care about anyone's constitutional rights.  We have laws in Louisiana.  We make our own laws."[17]   Plaintiffs allege that Williams was ill for two weeks following his release because he was deprived medication for his heart and breathing conditions.[18]   Plaintiffs further allege that in response to requests for medical assistance and sanitation, prison guards responded, "This is St. Slamity, if you don't like it, don't commit crimes in the parish."[19]

Plaintiffs allege that they were all forced to sleep on the bare concrete floor of their respective holding cells for the duration of their detainment, despite the availability of "cell space" and beds within the prison.[20]   Plaintiffs further allege that "jail staff admitted that the conditions of confinement were in place to teach inmates a lesson."[21]   Plaintiffs argue that the defendants failed to provide the minimum standards for the operation and management of Louisiana jails, set forth in Title 22, Part III, Subpart 2 of the Louisiana Administrative Code ("LAC").[22]   Plaintiffs

---

[15] *Id*. at ¶¶ 115, 116, 118, 128.
[16] *Id*. at ¶¶ 133, 134, 136, 152.
[17] *Id*. at ¶ 129.
[18] *Id*. at ¶¶ 139-141.
[19] *Id*. at ¶ 150.
[20] *Id*. at ¶¶ 101, 119, 138.
[21] *Id*. at ¶151.
[22] *Id*. at ¶¶ 39-54, 99, 118, 136.

contend that Title 22 of the LAC requires prisons to provide inmates with clean linen and bedding upon admission and at least once a week thereafter, disinfection of inmates' mattresses, pillows and mattress covers, daily access to showers, and to classify and transfer new inmates to an appropriate housing area no later than 48 hours after placing them in individual intake holding cells.[23]

Pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), Plaintiffs bring this action on behalf of themselves and a putative class of similarly situated individuals, defined as follows:

> All detainees who have been or will be placed into the custody of the St. Tammany Parish Jail and were detained for at least two consecutive days in holding cells.  The class period commences when this practice began, including but not limited to the time period commencing on June 29, 2019, and extends to the date on which St. Tammany Parish is enjoined from, or otherwise ceases, enforcing its policy, practice and custom of refusing to abide by appropriate detention and housing standards to all pre-trial detainees admitted to the St. Tammany Parish Jail and held in the intake and/or holding cell area.  Specifically excluded from the class are Defendant and any and all of its respective affiliates, legal representatives, heirs, successors, employees or assignees.[24]

Plaintiffs seek a class-wide judgment declaring that the policies, practices and/or customs described above violate the Fourteenth Amendment to the United States Constitution, a class-wide injunction enjoining the defendants from continuing such policies, practices and/or customs, and an award of compensatory and punitive damages on behalf of the class, as well as attorney's fees and costs.[25]

---

[23] *Id*. at ¶¶ 39-54.
[24] *Id*. at ¶ 24.
[25] *Id*. at ¶¶ 3, 164-165, 189-192.

On September 16, 2020, Longino and Strain, each in their official and individual capacities (collectively, "Defendants"), filed the instant Motion to Dismiss Pursuant to Rule 12(b)(6).[26]   Defendants assert that individual capacity claims against a supervisor under 42 U.S.C. § 1983 require Plaintiffs to allege either that Defendants affirmatively participated in the acts that caused the constitutional deprivation or that Defendants implemented an unconstitutional policy that causally resulted in the constitutional injury.[27]   Defendants argue that there are no such allegations in the Complaint against Longino or Strain.   Defendants point out that Plaintiffs have alleged that Strain served as Sheriff of St. Tammany Parish from 1996 through June 30, 2016, and that Randy Smith has been the Sheriff of St. Tammany Parish since June 30, 2016.[28]   Defendants claim that Strain ceased exercising any authority over the St. Tammany Parish Sheriff's operations, including the jail, on June 30, 2016 when Sheriff Strain took office.   Defendants also point out that Plaintiffs have alleged that Longino was the warden of the jail "at all relevant times and until October 11, 2019."[29]   Defendants highlight that, by Plaintiffs' own admission, Longino lacked authority over any aspect of the jail following October 11, 2019.   Defendants note that Plaintiffs have not alleged that they were detained in St. Tammany Parish Jail while Strain served as Sheriff, and have alleged that only Williams was a pre-trial detainee while Longino was still employed by the Sheriff.[30]

---

[26] R. Doc. 25.
[27] R. Doc. 25-1 at p. 4 (citing *Romero v. Brown*, 937 F.3d 514, 523 (5th Cir. 2019)).
[28] R. Doc. 25-1 at p. 2 (*citing* R. Doc. 1 at ¶ 18).
[29] R. Doc. 25-1 at p. 2 (*citing* R. Doc. 1 at ¶ 20).
[30] R. Doc. 25-1 at p. 2.

Defendants assert that Plaintiffs have failed to allege that Strain enacted or created the policy of keeping individuals in holding cells for longer than 48 hours, and allege only that this policy was "maintained" by Strain, was "put in place as early as April 2011," and that Strain was Sheriff in 2012 when the DOJ wrote a report regarding the conditions of the jail.[31]  Defendants argue that these allegations are insufficient to state a claim against Strain considering no direct involvement is alleged.  Defendants argue that Plaintiffs have likewise failed to allege any facts that would support an inference that Longino was in a position of authority at the jail at the time this policy was allegedly enacted, that Longino created the policy or that Longino was personally involved with any of the alleged constitutional violations claimed by Plaintiffs.[32]  Although Plaintiffs also allege that Longino, like Strain, "maintained a custom, practice and *de facto* policy of housing new arrivals in individual intake holding cells in excess of forty-eight (48) hours without classifying and transferring new arrivals to the appropriate housing area," Defendants assert that these allegations are insufficient to state a claim against Longino in his individual capacity because Plaintiffs failed to allege that Longino implemented an unconstitutional policy.[33]  Since Plaintiffs have failed to allege that Defendants created an unconstitutional policy or were otherwise personally involved in Plaintiffs' pre-trial detentions, Defendants argue that Plaintiffs have failed to state a claim against them for supervisory liability under § 1983 in their individual capacities.

---

[31] R. Doc. 25-1 at p.5 (*citing* R. Doc. 1 at ¶¶ 59, 60, 61-64).

[32] R. Doc. 25-1 at p. 5.

[33] *Id.* (*citing* R. Doc. 1 at ¶ 59).

Even if Plaintiffs had sufficiently alleged that Defendants personally enacted the challenged policy, Defendants assert that all of the individual capacity claims against them must be dismissed because the challenged policy is not "so deficient that the policy **<u>itself</u>** is a repudiation of constitutional rights."[34]   Defendants argue that the policy that the jail would house new arrivals in individual intake holding cells in excess of 48 hours without classifying and transferring new arrivals to the appropriate area fails to satisfy this test because there is no constitutional right to be held in a jail holding cell for 48 hours or less when that detention is otherwise lawful.[35]   Defendants point to jurisprudence indicating that the judiciary is ill-equipped to micro-manage a jail's day-to-day operations and that judicial restraint is appropriate "because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees."[36]   Defendants also emphasize that other Sections of this Court have repeatedly held that keeping individuals in holding cells at the St. Tammany Parish Jail for periods as long as 15 to 18 days is insufficient to rise to the level of a constitutional violation.[37]   Because the challenged policy constitutes nothing more than a *de minimis* level of imposition on pre-trial detainees,

---

[34] R. Doc. 25-1 at p. 6 (quoting *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002)) (emphasis added by Defendants).

[35] R. Doc. 25-1 at p. 6.

[36] *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 539 n.21, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Ruiz v. El Paso Processing Center*, 299 Fed.Appx. 369, 371 (5th Cir. 2008); *Maddox v. Gusman*, Civ. A. No. 14-2435, 2015 WL 1274081, at *3 (E.D. La. Mar. 19, 2015)).

[37] R. Doc. 25-1 at pp. 6-7 (citing *Hill v. Smith*, Civ. A. No. 20-1042, 2020 WL 2226316, at *2 (E.D. La. April 1, 2020), *report and recomm. adopted by* 2020 WL 2219366 (E.D. La. May 7, 2020) (Lemmon, J.); *Allen v. St. Tammany Parish*, Civ. A. No. 17-4091, 2018 WL 558503, at *3-5 (E.D. La. Jan. 2, 2018), *report and recomm. adopted by* 2018 WL 537495 (Africk, J.)).

Defendants argue that Plaintiffs have failed to assert a plausible claim against them in their individual capacities.

Defendants further assert that the individual capacity claims must be dismissed because Plaintiffs have failed to allege that the challenged policy caused the constitutional violations.[38]  Defendants contend that the Fifth Circuit requires not only that the supervisory defendant: (1) implement a policy (2) that is itself a repudiation of constitutional rights, "but also (3) that this policy be the **moving force** of the constitutional violation."[39]  Defendants point out that Plaintiffs have not alleged that Strain exercised any authority over the jail at any point during their respective detentions, as Plaintiffs allege that Strain ceased exercising any authority as Sheriff on July 1, 2016.[40]  As such, Defendants argue that Plaintiffs have failed to allege any facts to support even the barest inferences that any action by Strain was the moving force of the constitutional violations.[41]  Defendants further assert that Plaintiffs have alleged that only Williams was a pre-trial detainee while Longino was still employed by the Sheriff, as Louviere and Hall allege that their detention began after Longino was no longer employed by the Sheriff.  Defendants argue that the fact that Longino was a private citizen prior to the detentions of Louviere and Hall precludes the inference that any action by Longino was the moving force of any alleged constitutional injury.[42]  Defendants further argue that because Strain's last

---

[38] R. Doc. 25-1 at p. 7 (citing *Cozzo*, 279 F.3d at 289).
[39] R. Doc. 25-1 at p. 7 (citing *Cozzo*, 279 F.3d at 289) (emphasis added by Defendants).
[40] R. Doc. 25-1 at p. 7.
[41] *Id*. at pp. 7-8.
[42] *Id*. at p. 8.

day in office was June 30, 2016, any claims against Strain are prescribed under Louisiana law, which governs Plaintiff's § 1983 claims.[43]

Defendants further argue that they are entitled to qualified immunity and that Plaintiffs have failed to defeat the defense of qualified immunity by showing that Defendants violated a statutory or constitutional right and that the right was clearly established at the time of the challenged conduct.[44]  Defendants aver that Plaintiffs cannot cite to any existing authority to show that the policy at issue is itself unconstitutional, nor can they cite any authority that places the constitutional question related to keeping individuals in holding cells longer than 48 hours "beyond debate."[45]  Finally, Defendants assert that the official capacity claims asserted against them must be dismissed as redundant because courts treat suits against state officers in their official capacity like suits against the State.[46]  Relying on Fifth Circuit precedent, Defendants assert that courts have held that when the government entity itself is a defendant, claims against entity members/officers in their official capacities are redundant and appropriate for dismissal.[47]  Defendants assert that because Plaintiffs have sued Sheriff Smith in his official capacity, the claims against Strain and Longino in their official capacities are redundant and should be dismissed.[48]  Additionally, because Plaintiffs have failed to state a plausible federal law claim against Defendants, Defendants assert that the Court should decline to exercise

---

[43] R. Doc. 25-1 at p. 8 (citing authority).
[44] *Id.* at pp. 9-10.
[45] *Id.* at p. 10 (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)) (internal quotation marks omitted).
[46] R. Doc. 25-1 at p. 11 (citing *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)).
[47] R. Doc. 25-1 at p. 11 (citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001)).
[48] R. Doc. 25-1 at p. 11.

supplemental jurisdiction over any remaining state law claims pursuant to 28 U.S.C. § 1367, which should be dismissed.[49]

Plaintiffs oppose the Motion, asserting that Defendants' arguments in favor of dismissal are based upon a misrepresentation of the pleadings and a fundamental misunderstanding of statutes of limitation.[50]  Plaintiffs contend that, "Defendants engage in an exercise in semantics in arguing that 'Plaintiffs' allegations only provide that this policy was "maintained" by Mr. Strain,'" which Defendants contend is not enough to allege that Strain enacted or created the challenged policies.[51]  Plaintiffs claim that a cause of action exists against a defendant who implements an unconstitutional policy that causally results in injury.[52]  Although Defendants claim that the individual capacity claims must also be dismissed because the challenged policy is not "so deficient that it is a repudiation of constitutional rights," Plaintiffs assert that this standard  from *Cozzo v. Tangipahoa Parish Council* is substantially more narrow than *Romero*, which allows for recovery against those who implement unconstitutional policies.[53]  Plaintiffs then dispute Defendants' assertion that the pre-trial conditions complained-of are "trivial inconveniences" or "*de minimis* level[s] of imposition on pretrial detainees."[54]  Plaintiffs assert that Defendants are also responsible for the culture and policies of depriving inmates of bedding, adequate bathroom facilities, and other policies and practices, as alleged in the Complaint.[55]

---

[49] *Id.* at pp. 11-12.
[50] R. Doc. 28-1 at p. 2.
[51] *Id.* at p. 5 (*citing* R. Doc. 25-1 at p. 5).
[52] R. Doc. 28-1 at p. 4 (citing *Romero v. Brown*, 937 F.3d 514, 523 (5th Cir. 2019)).
[53] R. Doc. 28-1 at p. 5 (citing *Cozzo*, 279 F.3d 273, 289 (5th Cir. 2002); *Romero*, 937 F.3d 514).
[54] R. Doc. 28-1 at p. 6 (*quoting* R. Doc. 55-1 at p. 6) (internal quotation marks omitted).
[55] R. Doc. 28-1 at p. 6 (*citing* R. Doc. 1 at ¶¶ 69, 81-92).

As such, Plaintiffs maintain that they have stated a claim for which relief can be granted under the Fourteenth Amendment.

Regarding Defendants' assertion that Plaintiffs have failed to allege that Defendants were the moving force behind the constitutional violations, Plaintiffs assert that, "It is difficult to imagine a scenario more fittingly described as 'moving force' [sic] than these two defendants who implemented and maintained policies so deeply ingrained in the St. Tammany Parish Jail that they remain in the present time after their respective tenures have expired."[56]   Plaintiffs further assert that Defendants fundamentally misunderstand statutes of limitation, and that a cause of action accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action."[57]   Although Defendants believe that Plaintiffs' claims should have expired years before they were detained, Plaintiffs assert that, "it is not the date the tortious act was committed that triggers the running of the statute of limitations; it is the date the plaintiff became aware of the injury."[58]   As such, Plaintiffs argue that the Motion should be denied to the extent it is based upon a statute of limitations defense.

Plaintiffs further assert that Defendants have failed to prove that they are entitled to qualified immunity.[59]   Though it is not entirely clear, Plaintiffs appear to argue that Defendants were on sufficient notice that "implementing *de facto* policies

---

[56] R. Doc. 28-1 at pp. 6-7.
[57] *Id.* at p. 7 (quoting *Adepegba v. State of La.,* 41 F.3d 663 (5th Cir. 1994); *Franklin v. Pursley*, 51 F.3d 1042 (5th Cir. 1995); *Metcalf v. Robertson*, 62 F.3d 394 (5th Cir. 1995)) (internal quotation marks omitted).
[58] R. Doc. 28-1 at p. 7.
[59] *Id.* at pp. 7-9.

and customs of overcrowding for extensive periods of time, forcing inmates to sleep on concrete floors with little or no bedding, depriving inmates of adequate toilet facilities, and withholding hygiene items, blankets, and medications as punishment amounted to a conditions of confinement Fourteenth Amendment violation."[60]   As such, Plaintiffs assert Defendants are not entitled to qualified immunity.   Plaintiffs do not address Defendants' contention that the claims against them in their official capacities must be dismissed as redundant.

## II.    LEGAL STANDARD

### A. Motion to Dismiss

It is well-settled in this Circuit that motions to dismiss under Fed. R. Civ. P. 12(b)(6) are viewed with disfavor and are rarely granted.[61]   To overcome a defendant's motion to dismiss, a plaintiff must plead a plausible claim for relief.[62]   A claim is plausible if it is pleaded with factual content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged.[63]   But, no matter the factual content, a claim is not plausible if it rests on a legal theory that is not cognizable.[64] In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff.[65]   However, the factual allegations must be enough to raise a right to relief above the speculative level on the

---

[60] *Id.* at pp. 8-9 (citing *Oladipupo v. Austin*, 104 F. Supp. 2d 626, 637 (W.D. La. 2000)).

[61] *Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (quoting *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).

[62] *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

[63] *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

[64] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010).

[65] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

assumption that all of the complaint's allegations are true.[66]   "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[67]   In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[68]   The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[69]

### B. Individual Capacity Claims Under 42 U.S.C. § 1983.

The instant Motion to Dismiss was brought by former Sheriff Strain and former Warden Longino, who were sued in their individual and official capacities under 42 U.S.C. § 1983 for maintaining the jail policies that Plaintiffs claim deprived them of their rights secured by the Fourteenth Amendment of the United States Constitution.[70]   "Plaintiffs suing governmental officials in their individual capacities, however, must allege specific conduct giving rise to a constitutional violation."[71] According to the Fifth Circuit, "This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a constitutional violation."[72]   Additionally, a supervisor is liable under 42 U.S.C. § 1983 if: (1) he

---

[66] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
[67] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (internal citations omitted).
[68] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).
[69] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).
[70] R. Doc. 1 at ¶¶ 153-165.
[71] *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)).
[72] *Oliver*, 276 F.3d at 741 (citing *Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir. 1996)).

affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.[73] The Fifth Circuit has clarified that supervisory liability may exist "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."[74]

The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law.[75] Where, as here, a § 1983 defendant pleads qualified immunity, the plaintiff then has the burden to rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law.[76] In a qualified immunity analysis, the Court must determine: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and, if so, (2) whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident.[77] A constitutional right is "clearly established" when the contours of the right are "sufficiently clear that a reasonable official would understand that what he

---

[73] *Romero v. Brown*, 937 F.3d 514, 523 (5th Cir. 2019) (quoting *Gates v. Tex. Dev't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)) (internal quotation marks omitted).

[74] *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002) (citing *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987)).

[75] *Thompson v. Upshur County, Texas*, 245 F.3d 447, 456 (5th Cir. 2001).

[76] *Id.* (quoting *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997)) (internal quotation marks omitted).

[77] *Thompson*, 245 F.3d at 457 (citing *Hare v. City of Corinth*, 135 F.3d 320, 325-26 (5th Cir. 1998); *Pierce*, 117 F.3d at 872).

is doing violates that right."[78]  Further, a defendant's actions "are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff."[79]

### C. Official Capacity Claims Under 42 U.S.C. § 1983

According to the Fifth Circuit, "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."[80] As this Court previously explained, "any official-capacity claims against the defendants would in reality be claims against the local governmental body itself."[81] In order to hold a municipality or a local government unit liable under 42 U.S.C. § 1983 for the misconduct of one of its employees, a plaintiff must allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted.[82]  To satisfy the "cause in fact" requirement, a plaintiff must allege that the custom or policy served as the moving force behind the constitutional violation at issue, or that her injuries resulted from the execution of the official policy or custom.[83]  According to the Fifth Circuit, "The description of a policy or custom and its relationship to the

---

[78] *Thompson*, 245 F.3d at 456 (quoting *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed. 2d 523 (1987)) (internal quotation marks omitted).

[79] *Thompson*, 245 F.3d at 457 (citing *Anderson*, 483 U.S. 635, 107 S.Ct. at 3040; *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *Pierce*, 117 F.3d at 871) (emphasis in original).

[80] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) (citing *Monell v. Dept. of Social Servs. Of City of New York*, 436 U.S. 658, 691 n.55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

[81] *Bean v. Pittman*, Civ. A. No. 14-2210, 2015 WL 350284, at *2 (E.D. La. Jan. 26, 2015) (citing *Picard v. Gusman*, Civ. A. No. 12-1966, 2012 WL 6504772, at *4 (E.D. La. Nov. 26, 2012), *adopted*, 2012 WL 6504528 (E.D. La. Dec. 13, 2012); *Alexander v. City of Gretna*, Civ. A. No. 06-5405, 2010 WL 3791714, at *3 (E.D. La. Sept. 17, 2010); *Weatherspoon v. Normand*, Civ. A. No. 10-060, 2010 WL 724171, at *2-3 (E.D. La. Feb. 22, 2010)).

[82] *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir.1997) (quotation and internal quotation marks omitted).

[83] *Id*. (internal quotation and quotation marks omitted; citation omitted).

underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts."[84]

## III.   ANALYSIS

### A. The 42 U.S.C. § 1983 Claims Against Defendants in their Individual Capacities Must be Dismissed.

The question before the Court is straightforward—reviewing the facts alleged in the Complaint in the light most favorable to Plaintiffs, have Plaintiffs alleged sufficient facts for the Court to reasonably infer that Defendants are liable as supervisors under 42 U.S.C. § 1983 for the constitutional deprivations allegedly caused by the policies concerning the holding cells at the St. Tammany Parish Jail? The Court concludes that Plaintiffs have not. The Fifth Circuit has consistently held that a supervisor is liable under § 1983 if: (1) she affirmatively participates in the acts that cause the constitutional deprivation; or (2) she implements unconstitutional policies that causally result in the constitutional injury.[85] The Court finds that the Complaint fails to allege sufficient facts to satisfy either prong of *Romero* as to Strain or Longino.

### 1. *Affirmative Participation in the Acts that Caused the Constitutional Deprivation.*

As an initial matter, and as recognized in the Complaint, Strain was not employed at the jail at the time of Plaintiffs' pre-trial detentions in 2019, as he ceased being the Sheriff of St. Tammany Parish on July 1, 2016.[86] Thus, there are no

---

[84] *Id.* (citing *Fraire v. Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)).
[85] *Romero v. Brown*, 937 F.3d 514, 523 (5th Cir. 2019) (quoting *Gates v. Tex. Dept. of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)) (internal quotation marks omitted).
[86] *See*, R. Doc. 1 at ¶¶ 15, 18, 96, 111, 115, 128, 133, 152.

allegations in the Complaint that Strain "affirmatively participated" in the actions that caused the alleged constitutional violations or that he was actually involved in Plaintiffs' pretrial detainment.[87]   While Plaintiffs allege that the five defendants "maintained a custom, practice, and *de facto* policy of housing new arrivals in individual intake holding cells in excess of forty-eight (48) hours without classifying and transferring new arrivals to the appropriate housing area," and that this custom, practice and *de facto* policy was "put in place as early as April 2011" when Strain was sheriff, there is no allegation that Strain created or enacted the policy.[88]  By Plaintiffs' own admission, Sheriff Randy Smith, who has been the sheriff of St. Tammany Parish since 2016, is responsible for the "supervision, administration, policies, practices, customs, and operations of the St. Tammany Parish Sheriff's Office and the St. Tammany Parish Jail."[89]   This allegation accurately reflects Louisiana law, which provides that sheriffs are final policy makers with respect to the management of jails and that the administration of jails is the province of the sheriff.[90]   Because Strain was no longer employed by the jail in 2019, the Complaint is devoid of any allegation that Strain was personally involved in Plaintiffs' pre-trial detainment.  The Court declines to attach supervisory liability for misconduct which occurred years after Strain left office.

---

[87] *Romero*, 937 F.3d at 523-24.
[88] R. Doc. 1 at ¶¶ 59, 60.
[89] *Id.* at ¶¶ 15-16.
[90] *Jones v. St. Tammany Parish Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. May 8, 1998) (*citing* La. Const. Art. 5, § 27); *O'Quinn v. Manuel,* 773 F.2d 605 (5th Cir. 1985) (*citing* La. R.S. 15:702).

As for Longino, Plaintiffs allege that he was the Warden of St. Tammany Parish Jail "[a]t all relevant times and until October 11, 2019."[91]  Plaintiffs allege that Hall's pre-trial detainment occurred from October 18, 2019 through November 1, 2019, *after* Longino ceased being the Warden.[92]  Although not expressly alleged in the Complaint, Longino was the Warden at the time of Louviere and Williams' pre-trial detainment in June 2019 and September 28, 2019 through October 3, 2019, respectively.[93]  The Complaint, however, contains no allegations that Longino "affirmatively participat[ed] in the acts that caused the constitutional deprivation" or had any actual involvement in Plaintiffs' pre-trial detainment.[94]  Plaintiffs allege that the five defendants, including Longino, "maintained a custom, practice, and *de facto* policy of housing new arrivals in individual intake holding cells in excess of forty-eight (48) hours without classifying and transferring new arrivals to the appropriate housing area."[95]  Plaintiffs also allege that, "this custom, practice, and *de facto* policy was put in place as early as April 2011,"[96] which appears to be while Longino was the Warden.[97]  However, there are no allegations in the Complaint that Longino created or enacted that policy.  Thus, the Complaint contains no allegations that Longino was personally involved in Plaintiffs' pre-trial detainment.

---

[91] R. Doc. 1 at ¶ 20.
[92] *Id*. at ¶¶ 20, 115, 128.
[93] *Id*. at ¶¶ 96, 111, 133, 152.
[94] *Romero v. Brown*, 937 F.3d 514, 523-24 (5th Cir. 2019).
[95] R. Doc. 1 at ¶ 59.
[96] *Id*.  at ¶ 60.
[97] The Court notes that the Complaint does not specify when Longino became the Warden of St. Tammany Parish Jail, and alleges only that, "At all relevant times and until October 11, 2019, Defendant GREG LONGINO was the Warden of the St. Tammany Parish Jail."  R. Doc. 1 at ¶ 20.

## 2. *Implementation of an Unconstitutional Policy that Causally Results in the Constitutional Injury.*

With respect to the second prong of *Romero*, Plaintiffs have alleged that Strain and Longino, along with the other named defendants, "maintained a custom, practice, and *de facto* policy of housing new arrivals in individual intake holding cells in excess of forty-eight (48) hours without classifying and transferring new arrivals to the appropriate housing area," and that this challenged policy "was put in place as early as April 2011" when Strain was the sheriff.[98]  Plaintiffs also generally allege, as to all five defendants, that, "The aforementioned conditions of the holding cells of St. Tammany Parish Jail were created and maintained pursuant to pervasive and longstanding policies, customs and practices created by Defendants as supervisory officials of the St. Tammany Parish and its jail."[99]  The Court finds such conclusory statements are insufficient to allege that Defendants implemented the challenged policies.[100]

The Court further finds that Plaintiffs have not alleged facts to indicate that the challenged policies are "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."[101] Plaintiffs failed to address the legal authority from this Court, cited in Defendants' Motion, indicating that this Court has repeatedly held that pre-trial detainment in the St. Tammany Parish Jail for periods as long as 15 to 18 days is insufficient to rise

---

[98] R. Doc. 1 at ¶¶ 56-57.
[99] *Id.* at ¶¶ 158, 172.
[100] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).
[101] *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002) (citing *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987)).

to the level of a constitutional violation.[102]  Additionally, the Court is not persuaded that Plaintiffs have asserted sufficient facts to plausibly allege that Strain or Longino implemented unconstitutional policies that were the moving force behind the alleged constitutional violation.[103]  Even assuming that such policies existed during Strain's or Longino's tenure, Plaintiffs have correctly asserted that current Sheriff Randy Smith is responsible for the administration of the jail, including the implementation or continuation of any policies.[104]  Indeed, there is a new Sheriff in town, and that Sheriff implements jail policies.  Accordingly, the Court finds that Plaintiffs have failed to state a plausible claim against Defendants in their individual capacities under 42 U.S.C. § 1983, and that such claims must be dismissed.

As the Court has determined that Plaintiffs have failed to allege a plausible supervisory liability claim against Defendants, the Court need not address Defendants' other claims, including their claim of qualified immunity.

**B. The 42 U.S.C. § 1983 Claims Against Defendants in their Official Capacities Must be Dismissed.**

In the Complaint, Plaintiffs sued Defendants, the former sheriff and warden of the St. Tammany Parish Jail, as well as Randy Smith and Lacey Kelly, the current sheriff and warden of the jail, all in their individual and official capacities.[105]  Thus, Plaintiffs have filed claims against former Sheriff Strain, former Warden Longino, current Sheriff Smith, and current Warden Kelly, each in their official capacities.

---

[102] *See*, R. Doc. 25-1 at pp. 6-7 (citing authority); *See*, *supra*, note 37.
[103] *Cozzo*, 279 F.3d at 289.
[104] R. Doc. 1 at ¶¶ 15-16.
[105] *Id*. at ¶¶ 15-23.

Plaintiffs also sued the St. Tammany Parish Government.[106]  The claims against the St. Tammany Parish Government, Sheriff Smith and Warden Kelly remain pending.[107]

Under Fifth Circuit precedent, official capacity suits are generally another way of pleading an action against an entity of which an officer is an agent.[108]  Thus, when the government entity itself is a defendant, claims against the entity members/officers in their official capacities are redundant and appropriate for dismissal.[109]  Based on the foregoing authority, the Court finds that Plaintiffs' claims against former Sheriff Strain and former Warden Longino in their official capacities are the same as a suit against the local government entity, St. Tammany Parish Government.   Due to the pending claims against the St. Tammany Parish Government, the Court finds that Plaintiffs' official capacity claims against Strain and Longino are redundant and must be dismissed.

### C. Leave to Amend is Denied.

The Court notes that Plaintiffs have not requested leave to amend their Complaint, either by formal motion or in their Opposition brief.[110]  Nonetheless, while the Court will "freely give leave [to amend] when justice so requires,"[111] leave to

---

[106] *Id.* at Introductory Paragraph & ¶¶ 12-14.

[107] On March 23, 2021, the St. Tammany Parish Government filed a Rule 12(b)(6) Motion to Dismiss, which remains pending at this time.  *See,* R. Doc. 54.

[108] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) (citing *Monell v. Dept. of Social Servs. Of City of New York*, 436 U.S. 658, 691 n.55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

[109] *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (citing *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir. 1996); *Shanks v. Parish of Jefferson, La.*, Civ. A. No. 04-1057, 2004 WL 1737904, at *1 (E.D. La. July 30, 2004) (citing *Romero*, 256 F.3d at 355).

[110] *See, generally*, R. Doc. 28-1.

[111] Fed. R. Civ. P. 15(a).

amend "is by no means automatic."[112]  In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[113]  However, "i[t] is within the district court's discretion to deny a motion to amend if it is futile."[114]  The Fifth Circuit has stated that while it has not specifically defined "futility" in this context, "we join our sister circuits that have interpreted it to mean that the amended complaint would fail to state a claim upon which relief could be granted."[115]

Applying those factors here, the Court finds that granting leave to amend is not warranted in this case.  Plaintiffs have been on notice of the basis for Defendants' Motion to Dismiss since September 16, 2020 (when the Motion was filed) and have failed to move to amend their Complaint.  Indeed, Plaintiffs did not even request leave to amend the Complaint in their Opposition brief.  The Court also notes that Plaintiffs failed to move to amend their Complaint even after the Court granted an identical motion to dismiss on March 22, 2021, filed by Longino and Strain in a related case involving all of the same attorneys, the same defendants, and the same claims regarding the conditions of pre-trial detainment in the holding cells of St. Tammany Parish Jail.[116]  As such, the Court has no information regarding what

---

[112] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).
[113] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).
[114] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).
[115] *Id.*
[116] *See, Baqer v. St. Tammany Parish Government*, Civ. A. No. 20-980-WBV-DPC, 2021 WL 1090866 (E.D. La. Mar. 22, 2021).  The Court notes that St. Tammany Parish Sheriff's Office was also named

additional facts Plaintiffs could or would plead to assert a plausible claim against Longino or Strain.   Moreover, the Court has determined that Plaintiffs' official capacity claims against Defendants are redundant in light of the pending claims against the St. Tammany Parish Government.   Amending the Complaint could not overcome that obstacle.

Regarding Plaintiffs' individual capacity claims against Defendants, Louisiana law provides that, "Each sheriff shall be the keeper of the public jail of his parish, and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders."[117]   The Court has already acknowledged that sheriffs are responsible for the administration of jails and for their employees under Louisiana law.[118]   Plaintiffs contend that Defendants either promulgated or maintained policies which Plaintiffs claim are unconstitutional.   The Court finds that any amendment regarding these former employees would likely be futile, as the law is clear that the current sheriff, Sheriff Smith, is responsible for the administration of the jail.

The Court further finds that such an exercise of this Court's discretion would ultimately cause undue delay in this matter, which has been pending since June 2020.[119]   The Court finds that the facts of this case do not warrant such relief. Exercising the discretion afforded under Fed. R. Civ. P. 15 and the pertinent

---

as a defendant in the *Baqer* case, but was subsequently dismissed with prejudice based upon a joint stipulation. *Id.*, Civ. A. No. 20-980-WBV-DPC, 2021 WL 1090866 at *8, n.104.
[117] La. R.S. 15:704.
[118] *See, supra,* note 90 (citing *Jones v. St. Tammany Parish Jail,* 4 F. Supp. 2d 606, 613 (E.D. La. May 8, 1998) (*citing* La. Const. Art. 5, § 27); *O'Quinn v. Manuel,* 773 F.2d 605 (5th Cir. 1985) (*citing* La. R.S. 15:702)).
[119] R. Doc. 1.

jurisprudence, the Court finds that leave to amend would be futile in this case and, therefore, does not grant Plaintiffs leave to amend their Complaint to cure the deficiencies raised by Defendants' Motion to Dismiss.

However, the Court notes that Plaintiffs have also alleged state law claims against Defendants, which were not addressed in the instant Motion and, therefore, remain pending before the Court.[120]   Although Defendants assert that the Court should not exercise supplemental jurisdiction over these state law claims because Plaintiffs have failed to state a plausible federal claim against them,[121] Defendants misinterpret 28 U.S.C. § 1367.  Although the Court has determined that Plaintiffs' federal claims against Defendants must be dismissed under Fed. R. Civ. P. 12(b)(6), Plaintiffs have asserted federal claims against other defendants in this case, including Sheriff Smith, Warden Kelly, and the St. Tammany Parish Government, all of which remain pending before the Court at this time.  As such, and because the state law claims against Defendants "are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III,"[122] the Court will exercise its supplemental jurisdiction over Plaintiffs' state law claims against Defendants.

### D. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Dismiss Pursuant to Rule 12(b)(6), filed by defendants, Gregory Longino and Rodney J. Strain[123] is **GRANTED**,

---

[120] R. Doc. 1 at ¶¶ 166-183.
[121] R. Doc. 25-1 at pp. 11-12.
[122] 28 U.S.C. § 1367(a).
[123] R. Doc. 25.

and Plaintiffs' 42 U.S.C. § 1983 claims against Longino and Strain in their individual

and official capacities, are **DISMISSED with prejudice.**

New Orleans, Louisiana, April 22, 2021.

**WENDY B. VITTER**
**United States District Judge**