## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**KEVIN LOUVIERE, ET AL.**                         CIVIL ACTION

**VERSUS**                                         NO. 20-1840-WBV-DPC

**ST. TAMMANY PARISH GOVERNMENT, ET AL.**          SECTION: D (2)

## ORDER AND REASONS

Before the Court is Defendant St. Tammany Parish Government's Rule 12(b)(6) Motion to Dismiss.[1]  Plaintiffs oppose the Motion,[2] and St. Tammany Parish Government has filed a Reply.[3]  After careful consideration of the parties' memoranda and the applicable law, the  Motion is **GRANTED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[4]

This is an action for declaratory, injunctive and compensatory relief regarding the conditions of pre-trial detention in the four holding cells at St. Tammany Parish Jail.  On June 29, 2020, Kevin Louviere, Terry Matthew Hall, Jr. and Floyd Williams (collectively, "Plaintiffs"), filed a Complaint seeking damages under 42 U.S.C. § 1983, asserting that they were forced to endure prolonged pre-trial detainment in dirty, cramped holding cells in St. Tammany Parish Jail (the "jail") in violation of their constitutional rights under the Fourteenth Amendment of the United States

---

[1] R. Doc. 54.
[2] R. Doc. 55.
[3] R. Doc. 59.
[4] The Court recently set forth the factual and procedural background of this matter in great detail in an Order and Reasons issued on April 22, 2021 and, for the sake of brevity, it will not be repeated here. *See*, R. Docs. 40, 149, 150.

Constitution.[5]  Although Plaintiffs named several defendants in the Complaint, the only remaining defendants are: (1) St. Tammany Parish Government a/k/a St. Tammany Parish Council; (2) Randy Smith, in his individual and official capacity as the Sheriff of St. Tammany Parish from July 1, 2016 to the present ("Sheriff Smith"); and (3) Lacey Kelly, in her individual and official capacity as Warden of the St. Tammany Parish Jail "[a]t all relevant times" ("Warden Kelly").[6]

On March 23, 2021, St. Tammany Parish Government ("St. Tammany") filed the instant Motion to Dismiss, seeking to dismiss all of Plaintiffs' claims against it for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[7]  St. Tammany asserts that on March 22, 2021, this Court granted St. Tammany's Rule 12(b)(6) motion to dismiss in the companion case, *Baqer v. St. Tammany Parish Government*, and that the instant Motion and Memorandum in Support are identical to its pleadings in the *Baqer* matter.[8]  Because Plaintiffs' claims are identical to the claims asserted against St. Tammany in the *Baqer case*, St. Tammany urges the Court issue the same ruling in this case by dismissing all of Plaintiffs' claims against it with prejudice.[9]

Regarding Plaintiffs' federal claims against it under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution, St. Tammany asserts that Plaintiffs' claims are based upon three unfounded and unsupported allegations: (1) that St. Tammany is responsible for the operation and maintenance of the St. Tammany

---

[5] R. Doc. 1 at ¶¶ 1, 2, 154-165.

[6] *Id*. at ¶¶ 12-23.  *See*, R. Doc. 60 (dismissing defendants, Rodney J. Strain and Greg Longino).

[7] R. Doc. 54.

[8] R. Doc. 54-1 at p.2 (citing *Baqer v. St. Tammany Parish Government*, Civ. A. No. 20-980-WBV-DPC, 2021 WL 1090868 (E.D. La. Mar. 22, 2021)).

[9] R. Doc. 54-1 at p. 2.

Parish Sheriff's Office; (2) that St. Tammany operated the St. Tammany Parish Jail; and (3) that St. Tammany is liable for the actions of its final policy maker, the sheriff and his employees.[10]  St. Tammany contends that, "[w]ell established case law" from this Court, including the Court's recent decision in *Baqer*, firmly state that sheriffs are the final policymakers with respect to the management and operation of jails under Louisiana law and, as such, local governments can never be held liable under § 1983 for the acts of those whom the local government has no authority to control.[11] St. Tammany claims that it and the St. Tammany Parish Sheriff (the "Sheriff") are separate and distinct legal entities under Louisiana law.[12]  St. Tammany points out that La. R.S.15:704 explicitly states that, *"Each sheriff shall be the keeper of the public jail of his parish,* and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders."[13]  St. Tammany notes that La. R.S. 13:55399(C) reiterates that the sheriff is the keeper of the public jail of the parish and that the obligation of the local governing authority is limited to financing and physically maintaining parish jails.[14]

St. Tammany asserts that state and federal courts tasked with interpreting the legislative division of responsibilities between local governing authorities and sheriffs have repeatedly held that while the governing authority is responsible for the expenses of the jail, "the sheriff has the duty of operating the jail and seeing to it that

---

[10] R. Doc. 54-1 at pp. 2-3 & 5 (*citing* R. Doc. 1 at ¶¶ 12-14).

[11] R. Doc. 54-1 at p. 5 (citing *Baqer*, Civ. A. No. 20-980-WBV-DPC, 2021 WL 1090868; *Broussard v. Foti*, Civ. A. No. 00-2318, 2001 WL 258055 (E.D. La. Mar. 14, 2001); *Cousin v. St. Tammany Parish Jail*, Civ. A. No. 14-1514, 2015 WL 5017113 (E.D. La. Aug. 19 , 2015)).

[12] R. Doc. 54-1 at p. 5.

[13] R. Doc. 54-1 at p. 6 (*quoting* La. R.S. 15:704) (emphasis added by St. Tammany).

[14] R. Doc. 54-1 at p. 6 (*citing* La. R.S. 15:304, 15:702 & 33:4715).

the prisoners are properly cared for, fed and clothed."[15]   St. Tammany explains that a sheriff's policy-making authority is not the result of a delegation from parish or other local government entity, but derives from the Louisiana Constitution.[16]   St. Tammany claims that the Sheriff has ultimate responsibility for policy making and day-to-day decisions regarding the operation of the jail.[17]   St. Tammany further avers that the deputies are the employees of the Sheriff and that St. Tammany "has no authority to manage the Sheriff's employees."[18]   St. Tammany asserts that Plaintiffs have not alleged any breach of St. Tammany's financial obligation to fund the jail and that absent any claims that the jail was physically deficient or insufficiently funded, the § 1983 claims against it must be dismissed.[19]

St. Tammany further asserts that Plaintiffs' state law claims must also be dismissed for the same reasons, namely that St. Tammany has no authority or control over the operations of the jail and, therefore, cannot be liable for the acts of those over which it has no authority or control.[20]   St. Tammany asserts that Plaintiffs incorrectly allege that St. Tammany is responsible for the purported negligent acts of defendants, Smith, Strain, Longino, and Kelly "undertaken within the scope of their employment by the St. Tammany Parish Council and the St. Tammany Parish Sheriff's Office."[21]

---

[15] R. Doc. 54-1 at p. 6 (citing *Griffin v. Foti,* 523 So.2d 935, 938 (La. App. 4 Cir. 4/12/88)).
[16] R. Doc. 54-1 at p. 6 (citing *Jones v. St. Tammany Parish Jail*, 4 Supp. 2d 606, 613 (E.D. La. 1998); La. Const. Art. V, § 27).
[17] R. Doc. 54-1 at p. 7 (citing *Jones*, 4 Supp. 2d at 613).
[18] R. Doc. 54-1 at p. 7 (quoting *Jones*, 4 F. Supp. 2d at 613) (internal quotation marks omitted).
[19] R. Doc. 54-1 at p. 7 (citing *Broussard v. Foti*, Civ. A. No. 00-2318, 2001 WL 258055 (E.D. La. Mar. 14, 2001); *Courteaux v. Larpenter*, Civ. A. No. 19-13173, 2020 WL 2771755, at *6 (E.D. La. Apr. 27, 2020)).
[20] R. Doc. 54-1 at pp. 7-8.
[21] *Id.* at p. 8 (*quoting* R. Doc. 1 at ¶ 186) (internal quotation marks omitted).

St. Tammany maintains that it is not the employer of the Sheriff or his deputies and employees under Louisiana law.[22]  Even assuming that St. Tammany did employ the Sheriff and his deputies, St. Tammany argues that the doctrines of *respondeat superior* and/or vicarious liability are insufficient to state a claim of municipal liability, which must be based on factual allegations that demonstrate the existence of a policy, custom or practice of the governmental entity that caused the alleged constitutional deprivation.[23]  St. Tammany asserts that under Louisiana law, "the sheriff in his official capacity is the appropriate governmental entity responsible for any constitutional violations committed by his office."[24]  St. Tammany argues that the foregoing legal authority clearly establishes that it does not employ or exercise any control of the Sheriff or his deputies.  As such, St. Tammany contends that it cannot be liable for the alleged acts or omissions of the other defendants in this case and that Plaintiffs' claims should be dismissed.

Plaintiffs oppose the Motion, asserting that while St. Tammany's Motion is identical to its motion in the *Baqer* case, "Plaintiffs' argument in opposition is not."[25] Plaintiffs contest St. Tammany's recitation of the facts without identifying which facts are purportedly incorrect, asserting only that, "since the Defendant's argument

---

[22] R. Doc. 54-1 at p. 8 *(citing* La. Const. Art. V, § 27; La. R.S. 13:5537(A)(1); *Baqer v. St. Tammany Parish Government,* Civ. A. No. 20-980-WBV-DPC, 2021 WL 1090868, at *5 (E.D. La. Mar. 22, 2021); *Jones,* 4 Supp. 2d at 613).
[23] R. Doc. 54-1 at p. 9 (citing *Monell v. Dept. of Soc. Servs of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).
[24] R. Doc. 54-1 at p. 10 (quoting *Causey v. Parish of Tangipahoa,* 167 F. Supp. 898, 907 (E.D. La. Apr. 12, 2001)) (internal quotation marks omitted).
[25] R. Doc. 55 at p. 2.  Though Plaintiffs advise that their argument in opposition is not identical to Plaintiffs' Opposition in *Baqer*, the Court notes that the Opposition briefs are identical except for the inclusion of a section with nine bullet points requesting leave to amend in this case.  *See,* R. Doc. 73 in *Baqer v. St. Tammany Parish Government*, Civ. A. No. 20-980-WBV-DPC (E.D. La.).

is based on its own version or interpretation of the facts, this should be the end of the inquiry, and the motion denied."[26]  After enumerating the claims made against St. Tammany in their Complaint, Plaintiffs contend that they have met the pleading requirements set forth in Fed. R. Civ. P. 8(a).[27]  Plaintiffs assert that St. Tammany's argument that it "has 'no authority over the operation or maintenance of the jail, the sheriff, or the sheriff's employees,'" is "not exactly correct" because St. Tammany has a statutory duty to properly finance and physically maintain the jail.[28]  Plaintiffs argue that while the probability of their recovery against St. Tammany may be low in light of its limited duty in this case, "it is plausible that discovery will reveal that St. Tammany Parish Government's failure to properly fund the sheriff's office and/or failure to properly maintain the jail facility was a moving force" behind placing detainees in small, unsanitary cells.[29]

Plaintiffs then cite a decision from the Middle District of Louisiana, wherein the court held that a parish government could be held liable regarding the management and operations of the jail where the plaintiffs had plausibly pleaded that the local parish government breached its duty to fund and maintain the jail, that the jail was physically deficient and underfunded, and that the local parish government had knowledge of such inadequacies.[30]  Plaintiffs claim that they have similarly alleged a constitutional injury, especially where St. Tammany was informed

---

[26] R. Doc. 55 at p. 3.
[27] *Id*. at pp. 3-4.
[28] *Id*. at pp. 4-5 (*quoting* R. Doc. 54-1 at p. 3; citing La. R.S. 15:304, 15:702 & 33:4715).
[29] R. Doc. 55 at p. 5.
[30] R. Doc. 55 at pp. 5-6 (citing *Colbert v. City of Baton Rouge/Parish of East Baton Rouge,* Civ. A. No. 17-00028-BAJ-RLB, 2018 WL 344966 (M.D. La. Jan. 9, 2018)).

of certain deficiencies by the DOJ's investigation.[31]  Plaintiffs argue that the Motion to Dismiss should be denied because St. Tammany has a statutory duty to fund and maintain the jail that, if breached, could have caused Plaintiffs' constitutional injuries.[32] With respect to their state law claims, Plaintiffs "incorporate by reference" their previous arguments, and maintain that St. Tammany's failure to provide adequate funding could have caused plaintiffs' injuries.[33]

Plaintiffs alternatively request leave to amend their Complaint to allege additional facts if the Court finds the Motion to Dismiss has merit.[34]  Plaintiffs list nine facts that they would include in their amended complaint, all relating to St. Tammany's financial responsibility to fund the St. Tammany Parish Jail, and the rejection of a St. Tammany Parish sales tax in March 2018 that helped to fund jail operations.[35]  Plaintiffs' claim that they would assert that the loss of the sales tax revenue had negative financial implications on the jail budget, resulting in a reduction of the jail's workforce, and that St. Tammany did not find a substitute source of revenue to make up for the shortfall.[36]  Plaintiffs would further assert that St. Tammany breached its duty to properly fund and maintain the St. Tammany Parish Jail, and that St. Tammany's policy of not finding a substitute source of revenue funding for the expired sales tax contributed to budget shortfalls and underfunding of the jail, which was the moving force behind the overcrowded and

---

[31] R. Doc. 55 at p. 6.
[32] *Id*. at pp. 6-7.
[33] *Id*. at pp. 8-9.
[34] *Id*. at pp. 2, 7.
[35] *Id*. at p. 7.
[36] *Id*.

unsanitary conditions that violated Plaintiffs' constitutional rights.[37]  Plaintiffs claim that leave to amend their Complaint to include the foregoing facts "would cure any deficiencies in the Complaint that this Court identified in its March 22, 2021 order granting dismissal in *Baqer v. St. Tammany Par. Gov.*, 2021 U.S. Dist. LEXIS 53200 (E.D. La. Mar. 22, 2021)."[38]

In response, St. Tammany asserts that Plaintiffs' claims do not arise out of, or relate to, St. Tammany's failure to fund the jail and, and that Plaintiffs' request for leave to amend lacks merit.[39]  St. Tammany argues that Plaintiffs' new theory of recovery – that the expiration of a March 2018 tax was the moving force that resulted in unconstitutional conditions in the holding cells at the jail – is both speculative and inconsistent with the allegations in their Complaint.  St. Tammany contends that Plaintiffs have failed to explain how any change in the jail's revenue stream in 2018 caused the sheriff to operate the jail in a manner that resulted in overcrowding and unconstitutional conditions in holding cells.[40]  St. Tammany asserts that Plaintiffs' proposed amendment also directly conflicts with several allegations in the Complaint, wherein Plaintiffs allege that they were housed in overcrowded holding cells despite the fact that the jail had numerous open beds.[41]  St. Tammany points out that Plaintiffs do not seek leave to withdraw these allegations.  St. Tammany also notes that this Court already determined in *Baqer* that such allegations do not indicate

---

[37] *Id.* at pp. 7-8.
[38] *Id.* at p. 8.
[39] R. Doc. 59 at p. 2.
[40] *Id.*
[41] *Id.* at pp. 2-3 (*quoting* R. Doc. 1 at ¶¶ 66, 76, 77, 101, 119, 138).

that St. Tammany failed to properly fund the jail or the its failure to properly fund the jail was a moving force that caused the unconstitutional conditions.[42]

St. Tammany again acknowledges its duty to fund the jail, but asserts that the Complaint "is entirely devoid of any allegations related to the funding or maintenance of the jail by [St. Tammany.]"[43]  St. Tammany argues that Plaintiffs' attempt to assert in their Opposition brief that St. Tammany may have failed to properly exercise its duty to fund the jail does not create a viable cause of action against St. Tammany. Referring back to its Memorandum in Support of its Motion, St. Tammany maintains that the sheriff, not St. Tammany, is responsible for the day-to-day operation of the jail and the care of inmates.[44]  St. Tammany also distinguishes the *Colbert* case cited by Plaintiffs by noting that the plaintiffs in that case had expressly pleaded in their complaint that the local government violated its duty to fund and physically maintain the jail.[45]  St. Tammany points out that the plaintiffs in *Colbert* also alleged that an inmate's death was caused in part to inadequate mental health services, which plaintiffs related to the parish's alleged failure to properly fund the prison's health care program.[46]  St. Tammany reiterates that there is no allegation of insufficient funding in this case, much less an alleged connection between its obligation to fund the jail and the alleged decision to keep inmates in holding cells.[47]

---

[42] R. Doc. 59 at p. 3 (citing *Baqer v. St. Tammany Parish Government*, Civ. A. No. 20-980-WBV-DPC, 2021 WL 1090868, at *7 (E.D. La. Mar. 22, 2021).

[43] R. Doc. 59 at p. 4.

[44] *Id*. at p. 4 (citations omitted).

[45] *Id*. at pp. 4-5 (quoting *Colbert v. City of Baton Rouge/Parish of East Baton Rouge,* Civ. A. No. 17-00028-BAJ-RLB, 2018 WL 344966, at *5 (M.D. La. Jan. 9, 2018)) (internal quotation marks omitted).

[46] R. Doc. 59 at p. 5.

[47] *Id*.

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6) Standard

It is well-settled in this Circuit that motions to dismiss under Fed. R. Civ. P. 12(b)(6) are viewed with disfavor and are rarely granted.[48]  To overcome a defendant's motion to dismiss, a plaintiff must plead a plausible claim for relief.[49]  A claim is plausible if it is pleaded with factual content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged.[50]  But, no matter the factual content, a claim is not plausible if it rests on a legal theory that is not cognizable.[51]  In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff.[52]  However, the factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.[53]  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[54]  In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[55]  The

---

[48] *Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (quoting *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).

[49] *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

[50] *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

[51] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010).

[52] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

[53] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

[54] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (internal citations omitted).

[55] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).

Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[56]

**B. Liability Under 42 U.S.C. § 1983**

According to the Fifth Circuit, "It is well established that a city is not liable under [42 U.S.C.] § 1983 on the theory of respondeat superior."[57]  Instead, a plaintiff asserting a claim against a municipality under 42 U.S.C. § 1983 must allege: (1) the existence of an official policy or custom; (2) a policymaker's actual or constructive knowledge of the policy or custom; and (3) a constitutional violation where the policy or custom is the "moving force."[58]  An "official policy or custom" can be shown through evidence of "an actual policy, regulation or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority."[59]  This Court has previously held that under the Louisiana Constitution, sheriffs are final policy makers with respect to the management of jails.[60]  The Fifth Circuit has further held that in Louisiana, the administration of jails is the province of the sheriff.[61]

Under Louisiana law, "Each sheriff shall be keeper of the public jail of his parish, and shall by all lawful means preserve the peace and apprehend all disturbers

---

[56] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.,* 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).

[57] *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citing *Monell v. Dept. of Soc. Servs of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

[58] *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (citing *Monell*, 436 U.S. at 694, 98 S.Ct. 2018).

[59] *Valle,* 613 F.3d at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)).

[60] *Jones v. St. Tammany Parish Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. May 8, 1998) (*citing* La. Const. Art. 5, § 27).

[61] *O'Quinn v. Manuel,* 773 F.2d 605 (5th Cir. 1985) (*citing* La. R.S. 15:702).

thereof, and other public offenders."[62]  Thus, in Louisiana, "the parish governing authority 'is responsible for the expenses of feeding, clothing, and providing medical treatment to the prisoners while the sheriff has the duty of operating the jail and seeing to it that the prisoners are properly cared for, fed and clothed.'"[63]  This Court has previously explained that, "The Sheriff's office also controls the inmates of the jail, the employees of the jail, and the daily operation of the jail,"[64] and that, "The Parish's responsibility to the jail is limited to the funding of the jail."[65]  "The Parish has no authority to manage the Sheriff's employees.  The Parish exercises no power or discretion in the functioning of the Sheriff's office or the jail."[66]  As this Court explained more recently, "Simply put, local governments can never be liable under Section 1983 for the acts of those whom the local government has no authority to control."[67]

## III.   ANALYSIS

### A. Dismissal is Warranted.

Plaintiffs have not alleged any breach of St. Tammany's duty to fund or maintain the jail in the Complaint.  Instead, the Complaint  focuses on the acts and policies of the Sheriff and/or his personnel in running the jail.  The Complaint alleges

---

[62] La. R.S. 15:704; *See,* La. R.S. 13:5539 ("Each sheriff shall be keeper of the public jail of his parish and shall preserve the peace and apprehend public offenders.").

[63] *Serigny v. Lafourche Parish Government ex rel. Charlotte Randolph Parish President*, Civ. A. No. 10-3205, 2012 WL 3548029, at *3 (E.D. La. Aug. 16, 2012) (quoting *O'Quinn*, 773 F.2d at 609).

[64] *Jones*, 4 F. Supp. 2d at 613 (*citing* La. R.S. 33:1435, 15:704; *O'Quinn*, 773 F.2d at 609).

[65] *Jones*, 4 F. Supp. 2d at 613 (*citing* La. R.S. 15:702; *Amiss v. Dumas*, 411 So.2d 1137, 1141 (La. App. 1 Cir. 1982)).

[66] *Jones*, 4 Supp. 2d at 613.

[67] *Cousin v. St. Tammany Parish Jail,* Civ. A. No. 14-1514, 2015 WL 5017113, at *3 (E.D. La. Aug. 19, 2015) (citing *McMillian v. Johnson,* 88 F.3d 1573, 1577 (11th Cir. 1996)).

constitutional violations regarding pretrial detainment, specifically alleging overcrowded and dirty cells, and failure to provide hygiene products and showers.[68] Regarding Plaintiffs' allegation of overcrowding, the Complaint provides that, "upon information and belief, beds were available for the pre-trial detainees."[69]   In fact, Plaintiffs contend that, "At all relevant times . . . ST. TAMMANY PARISH and the St. Tammany Parish Sheriff had numerous open beds," and that in January 2020, the jail had as many as 137 open beds.[70]   The Complaint fails to include any claim that St. Tammany has failed in its obligation to fund the jail.

Plaintiffs have also failed to identify any policy or custom that St. Tammany either promulgated or was aware of which was the moving force for any alleged constitutional violation, as required to establish liability under 42 U.S.C. § 1983.[71]   In the Opposition brief, Plaintiffs list the specific paragraphs of the Complaint containing their allegations against St. Tammany (incorrectly referred to as either "St. Tammany Parish Council" or "STPC").[72] Those allegations include "maintaining" individual intake holding cells, "housing" inmates in holding cells, "allowing" new inmates only sporadic showers, "denying" inmates recreational activity, and "placing" violent and non-violent inmates in the same holding cells.[73]   The Court notes that several of the allegations noted by Plaintiffs refer only to actions taken by the

---

[68] R. Doc. 1 at ¶¶ 1-2.

[69] *Id.* at ¶ 66.

[70] *Id.* at ¶¶ 76, 77.

[71] *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (citing *Monell v. Dept. of Soc. Servs of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

[72] R. Doc. 55.

[73] *Id.* at pp. 3-4 (*quoting* R. Doc. 1 at ¶¶ 66-69, 71, 73, 80-84, 86).

sheriff.[74]  The Court finds that Plaintiffs' Complaint fails to allege sufficient facts to state a § 1983 claim against St. Tammany.  Plaintiffs' allegations relate to the administration of the jail.  According to Louisiana jurisprudence, the sheriff, and not the state or parish, hires and fires deputies, exercises direct and indirect supervision and control over them, fixes their time and place of work, generally allocates their responsibility and assigns their duties.[75]  Neither the state nor the parish exercises any significant control over sheriff's deputies.[76]

For many of the same reasons, Plaintiffs' state law claims against St. Tammany also fail to state a claim under Rule 12(b)(6).  Plaintiffs allege that "Defendants" deprived Plaintiffs of the rights secured by Article I, Section 20 of the Louisiana Constitution because the conditions of the holding cells at St. Tammany Parish jail inflicted cruel, unusual and excessive punishment upon pretrial detainees, including Plaintiffs.[77]  Plaintiffs also allege that Smith, Strain, Longino and Kelly breached their duty to provide pretrial detainees safe, hygienic and sanitary conditions and their duty to meet statutory guidelines for conditions of confinement.[78]  Plaintiffs further allege that St. Tammany is responsible for those acts under a theory of *respondeat superior* as the employer of Smith, Strain, Longino and Kelly.[79]  As succinctly stated by another Section of this Court:

> In Louisiana, the legislative scheme dictates that the [governmental entity] bears the obligation of satisfying the expenses of housing

---

[74] R. Doc. 55 at pp. 3-4 (*quoting* R. Doc. 1 at ¶¶ 81-84, 86).
[75] *Jenkins v. Jefferson Parish Sheriff's Office*, 402 So.2d. 669 (La. 1981).
[76] *Id.*
[77] R. Doc. 1 at ¶¶ 166--177.
[78] *Id.* at ¶¶  178-183.
[79] *Id.* at ¶¶ 184-187.

> prisoners, while the sheriff has the duty of operating the facility. The [governmental entity] has no authority over the operations of the jail or the management of the sheriff's employees. In other words, the [governmental entity's] financial obligations do not constitute authority to control how the sheriff fulfills his duties.[80]

In the instant case, Plaintiffs simply have not identified any duty that St. Tammany has breached. Therefore, Plaintiffs' state and federal claims against St. Tammany must be dismissed.

### B. Leave to Amend is Denied.

In their Opposition brief, Plaintiffs assert that the Motion to Dismiss should be denied or, alternatively, that Plaintiffs should be granted leave to amend to plead adequate facts upon which relief may be granted.[81] As previously mentioned, Plaintiffs specify nine additional facts that they would include in an amended complaint and assert that, "Leave to amend Plaintiffs' Complaint to include these facts would cure any deficiencies in the Complaint that this Court identified in its March 22, 2021 order granting dismissal in *Baqer v. St. Tammany Par. Gov.*, 2021 U.S. Dist. LEXIS 53200 (E.D. La. Mar. 22, 2021)."[82] The Court disagrees.

While the Court will "freely give leave [to amend] when justice so requires,"[83] leave to amend "is by no means automatic."[84] In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

---

[80] *Broussard v. Foti*, Case No. 00-2318, 2001 WL 258055 (E.D. La. Mar. 14, 2001) (citing *O'Quinn v. Manuel*, 773 F.2d 605, 613 (5th Cir. 1985)) (internal citations omitted).
[81] R. Doc. 55 at pp. 2, 7-8.
[82] *Id.* at pp. 7-8.
[83] Fed. R. Civ. P. 15(a).
[84] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[85]   However, "i[t] is within the district court's discretion to deny a motion to amend if it is futile."[86]   The Fifth Circuit has stated that while it has not specifically defined "futility" in this context, "we join our sister circuits that have interpreted it to mean that the amended complaint would fail to state a claim upon which relief could be granted."[87]

The Court finds that Plaintiffs have been dilatory in seeking leave to amend, as it was only *after* the Court granted an identical motion to dismiss filed by St. Tammany in the *Baqer* matter that Plaintiffs have now requested leave to amend, and they only did so in an Opposition brief and not a formal motion to amend.[88]   The Court notes that this case has been pending since June 29, 2020.   Although St. Tammany's Motion to Dismiss has only been pending since March 23, 2021, Plaintiffs have been on notice of the basis for St. Tammany's Motion to Dismiss since July 2020, when St. Tammany filed an identical motion to dismiss in the *Baqer* case, which involves many of the same defendants and all of the same attorney's.[89]   Plaintiffs, however, have not filed a formal motion to amend their Complaint to address those deficiencies, even after the Court granted that motion to dismiss on March 22, 2021.

---

[85] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).

[86] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).

[87] *Id.*

[88] *See, Baqer v. St. Tammany Parish Government*, Civ. A. No. 20-980-WBV-DPC, 2021 WL 1090868, at *6-8 (E.D. La. Mar. 22, 2021).

[89] *Baqer v. St. Tammany Parish Government*, Civ. A. No. 20-980-WBV-DPC, 2021 WL 1090868, at *8 (E.D. La. Mar. 22, 2021).

Additionally, granting leave to amend would, ultimately, cause undue delay in this matter, which has been pending since June 2020.

The Court further finds, accepting Plaintiffs' proposed amendments as true, that Plaintiffs' proposed amendments would be futile in this case because the proposed amendments are conclusory and fail to state a claim under 42 U.S.C. § 1983. Plaintiffs seek to amend their Complaint to allege that, "For the 20 years prior to April 1, 2018 a dedicated sales tax existed in St. Tammany Parish to help fund jail operation," and that the loss of the sales tax revenue in March 2018 "had negative financial implications on the St. Tammany Jail budget, including a reduction in expenses and causing the Sheriff to reduce the Jail's workforce by at least 100 staff."[90] Plaintiffs also want to amend the Complaint to assert that St. Tammany "breached its duty to properly fund and maintain the St. Tammany Parish Jail," which "contributed to budget shortfalls and underfunding of the St. Tammany Parish Jail" and "was the moving force behind the overcrowded and unsanitary conditions which violated Plaintiffs' Fourteenth Amendment and State constitutional rights."[91] These allegations, however, are conclusory, as Plaintiffs fail to connect the lost revenue, which Plaintiffs claim led to a reduction of the jail's workforce, to the alleged unconstitutional conditions of the holding cells at St. Tammany Parish Jail.

Plaintiffs' proposed amendments also contradict several allegations in the Complaint, including that, "[J]ail staff admitted that the conditions of confinement

---

[90] R. Doc. 55 at p. 7.
[91] *Id.*

were in place to teach inmates a lesson."[92]   The proposed amendments similarly conflict with the allegations in the Complaint regarding the availability of open beds at St. Tammany Parish Jail.   As St. Tammany points out, there are at least six allegations in the Complaint that pretrial detainees were housed in the holding cells even though "beds were available," "ST. TAMMANY PARISH and the St. Tammany parish Sheriff had numerous open beds," and "In January 2020, the St. Tammany Parish Jail had as many as one hundred and thirty-seven (137) open beds."[93] Plaintiffs also specifically allege that they each slept in cramped holding cells "despite the availability of cell space and beds within the prison."[94]   Plaintiffs fail to address the apparent contradiction between their allegations regarding available beds at the jail and their proposed amendment that the lost revenue source was the moving force behind the overcrowded and unsanitary conditions of the jail.

Finally, the Court finds that Plaintiffs' reliance on *Colbert v. City of Baton Rouge/Parish of East Baton Rouge* is misplaced.[95]   While the *Colbert* court allowed the plaintiffs in that case to proceed with constitutional claims against the city government, that court also recognized that the plaintiffs had "expressly pleaded that [the city government] violated its duty to fund and physically maintain the prison" by alleging that the city government "failed to provide sufficient funding and oversight to all Defendants, resulting in unconstitutional conditions of confinement

---

[92] R. Doc. 1 at ¶ 151.
[93] R. Doc. 59 at p. 2 (*quoting* R. Doc. 1 at ¶¶ 66, 76, 77) (internal quotation marks omitted).
[94] R. Doc. 1 at ¶¶ 101, 119, 138.
[95] R. Doc. 73 at p. 5 (citing *Colbert v. City of Baton Rouge/Parish of East Baton Rouge,* Civ. A. No. 17-00028-BAJ-RLB, 2018 WL 344966 (M.D. La. Jan. 9, 2018)).

at the [jail]."[96]  The plaintiffs in *Colbert* had also alleged that the city government's "explicit policy of not sufficiently funding and overseeing [the jail] caused defects in physical design and manner of operation."[97]  As St. Tammany correctly points out, no such claims have been made by Plaintiffs in this case, even in the proposed amendments.  As previously discussed, Plaintiffs make clear in their Complaint that the jail had numerous open beds and "had as many as one hundred and thirty-seven (137) open beds" at the time of Plaintiffs' detention.[98]

Exercising the discretion afforded under Fed. R. Civ. P. 15 and the pertinent jurisprudence, the Court finds that granting Plaintiffs leave to amend their Complaint would be futile in this case and would fail to cure the deficiencies raised by St. Tammany's Motion to Dismiss.

### IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendant St. Tammany Parish Government's Rule 12(b)(6) Motion to Dismiss[99] is **GRANTED** and all of Plaintiffs' claims against St. Tammany Parish Government are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, April 23, 2021.

**WENDY B. VITTER**
**United States District Judge**

---

[96] *Colbert*, Civ. A. No. 17-00028-BAJ-RLB, 2018 WL 344966 at *5 (internal quotation marks and citation omitted).
[97] *Id.* (internal quotation marks and citation omitted).
[98] R. Doc. 1 at ¶ 77.
[99] R. Doc. 54.